G. H. RAGSDALE v. MARY A. TURNER, Appellant.

Reformation of instruments: MUTUAL MISTAKE: EVIDENCE: RECOV-ERY OF PAYMENT. Where the purchaser of property contracted to pay an agreed price therefor, by assuming a mortgage and paying taxes in stated amounts as part payment and the balance in cash, but after making the cash payment discovered that the mortgage and taxes amounted to more than the sum agreed upon, he was entitled to have the contract reformed on the ground of mutual mistake and to recover the overpayment on the taxes and mortgage, even though the contract was superseded by a deed to the property and an action at law for the overpayment might have been maintained, no objection to the form of the action having been made.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

SATURDAY, MARCH 13, 1909.

THIS is an action in equity asking the reformation of a real estate contract and the recovery of money alleged to have been overpaid for said property. There was a decree for the plaintiff, from which the defendant appeals. —*Affirmed.*

*Ryan & Ryan,* for appellant.

*Parsons & Parsons,* for appellee.

SHERWIN, J.—The defendant was the owner of the east two-thirds of lot 2, block 25, of the original town of Ft. Des Moines, and the plaintiff was negotiating the purchase of said property. The petition alleged that an oral

contract was entered into between the plaintiff and W. L. Ryan, attorney for the defendant, whereby the plaintiff agreed to pay $16,000 for said property. Such payment was to be made by plaintiff assuming a mortgage on said property owned by the Equitable Life Insurance Company of Iowa and paying the 1906 taxes and the balance in cash. The deal had not been closed when the plaintiff was called away from home. Before leaving, however, he placed the matter in the hands of his son, with directions to him to close the deal if the defendant finally concluded to accept $16,000 for the property; payment therefor to be made as hereinbefore stated. Mr. Ryan was also informed that the plaintiff was about to leave town, and was advised that he would make the necessary arrangements to close the purchase if the defendant consented to accept $16,000 for the property during the plaintiff's absence. The defendant, through her attorney, Mr. Ryan, advised the plaintiff's son that she would accept $16,000 for the property with payments in the manner indicated. Mr. Ryan and the plaintiff's son talked the matter over, and it was understood between them that $16,000 was to be the purchase price of the property, that the plaintiff was to assume the payment of whatever was due on the mortgage to the Equitable Life Insurance Company, to pay the 1906 taxes, and the balance of the $16,000 in cash. Mr. Ryan prepared a memorandum of said agreement, but it failed to include all thereof. It provided for the payment of the 1906 taxes, which were estimated at $350, and the payment of $15,650 in addition thereto; payment to be made as follows: "The said Ragsdale agrees to pay to the said Mary A. Turner the sum of $5,650 in cash and agrees to pay one certain note and mortgage for $10,000 running to the Equitable Life Insurance Company of Iowa." The deal was closed on the basis of this contract during the plaintiff's absence from home. When he returned he discovered that there was nearly a year's interest unpaid on

the mortgage in question, and that $350, the amount which had been estimated as the tax for 1906, was too small by several dollars. This action followed a failure to adjust the matter.

There is nothing in this case but a question of fact, and it is not at all a serious one. In her answer the defendant admitted that she has made an oral contract with Ragsdale whereby she agreed to sell him the property for $16,000. She also admitted that the taxes of 1906 were unpaid at the time she conveyed, and that she was to pay them. She also admitted that the mortgage to the insurance company was to be assumed by Ragsdale as a part of his payment of $16,000 for the property. In addition to this admission in the pleading, the record conclusively shows that $16,000 was the purchase price of the property agreed upon by the parties, that payment was to be made by Ragsdale assuming the mortgage in whatever sum might be due and paying the 1906 tax. It is further conclusively shown that he paid $5,650 in cash to the defendant and paid over $350 taxes. The cash payment and the taxes amounted to over $6,000, and the face of the mortgage being $10,000, and there being over $10,000 due on it at the time the conveyance was made to Ragsdale, it is very apparent that Ragsdale did not get the property at the price agreed upon.

While the defendant strenuously insists that the evidence does not show mutual mistake in the written contract, we are unable to agree with such contention. One of two things is absolutely true: Either it was a mutual mistake on the part of young Ragsdale and Mr. Ryan, or there was gross fraud on the part of the latter; and, as fraud is not charged or intimated, it is very clear that there was mutual mistake.

The appellant says, however, that it is too late to correct a mutual mistake in the written contract, because it has been superseded by the deed, and the plaintiff's remedy,

if he has any, is based upon the deed itself.  We do not agree with this proposition.  While the action was brought in equity and asked for a reformation of the contract, we do not think such an action was necessary.  The plaintiff might have sued at law to recover money paid through mistake without basing his action on the contract at all, and, if the defendant had then sought to defeat the action by proving the written contract, it would clearly have been competent for the plaintiff to show that such writing did not embody the true contract between the parties.  No objection was made to the form of the action, and hence there· was no error, however unnecessary it may have been to reform the contract.  The vital proposition in the case is:  Was the plaintiff entitled to recover the amount overpaid on the purchase price of the property?  There is no question but what he was.

The judgment was therefore right, and it is *affirmed*.